IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION, Plaintiff, | ) | |
| v. | ) | No. 06-cv-00918-JFM<br>Judge James F. Merow |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

**PARTIES' JOINT MOTION AND SUPPORTING JOINT STATUS REPORT FOR EXTENSION OF TEMPORARY STAY OF LITIGATION AND [PROPOSED] ORDER**

On December 21, 2007, the Court issued an order in this case, granting the Plaintiff and Defendant's (collectively, the "parties") joint motion for an extension of the temporary stay of litigation, to and including July 3, 2008, and directing the parties to file on or before July 3, 2008, a joint status report. Pursuant to Rule 6.1 of the Rules of the Court of Federal Claims ("RCFC"), the parties respectfully make this joint motion for an extension of the temporary stay of litigation, to and including January 15, 2009. This is the parties' fourth such motion. The grounds for the joint motion are set forth in the following supporting joint status report.

1. Plaintiff has filed this case and a companion case in the United States District Court for the District of Columbia asserting claims against Defendant relating to trust accounting and trust management duties and responsibilities allegedly owed by Defendant to Plaintiff. Plaintiff is represented by counsel who also represents 15 other Tribes or Indian entities asserting essentially the same trust and accounting and trust mismanagement claims. Plaintiff's attorney, Brian Leinbach, and his co-counsel are currently maintaining a total of 31 trust accounting and trust mismanagement cases in this

Court (15 cases)[1] and the United States District Court for the District of Columbia (16 cases),[2] on behalf of Plaintiff and the 15 other Tribes or Indian entities ("Leinbach Tribes" or "Leinbach cases").

2. Since the filing of this case and the companion case in the district court, the parties have sought jointly to extend the time for Defendant to file its Answer or otherwise respond to the Complaint so that the parties can pursue discussions to determine the possibility of settling or otherwise resolving the trust accounting and trust

---

[1] The trust accounting and trust mismanagement cases in this Court are Cheyenne River Sioux Tribe v. United States, No. 06-cv-00915-NBF; Confederated Tribes of the Goshute Reservation v. United States, No. 06-cv-00912-EGB; Crow Creek Sioux Tribe v. United States, No. 05-cv-1383L-MCW; Iowa Tribe of Kansas and Nebraska v. United States, No. 06-cv-00920-EJD; Lower Brule Sioux Tribe v. United States, No. 06-cv-00922-LB; Muscogee (Creek) Nation of Oklahoma v. United States, No. 06-cv-00918-JFM; Northwest Band of Shoshone Indians v. United States, No. 06-cv-00914-LB; Oglala Sioux Tribe v. United States, No. 05-cv-1378L; Omaha Tribe of Nebraska v. United States, No. 06-cv-00911-MBH; Prairie Band of Potawatomi Indians v. United States, No. 06-cv-00921-LJB; Red Cliff Band of Lake Superior Indians v. United States, No. 06-cv-00923-JPW; Rosebud Sioux Tribe v. United States, No. 06-cv-00924-EGB; Stillaguamish Tribe of Indians v. United States, No. 06-cv-00916-NBF; Winnebago Tribe of Nebraska v. United States, No. 06-cv-00913-MMS; and Wyandot Nation of Kansas v. United States, No. 06-cv-00919-LMB. On June 23, 2008, Judge Lettow dismissed Eastern Shawnee Tribe of Oklahoma v. United States, No. 06-cv-00917-CFL, without prejudice.

[2] The trust accounting and trust mismanagement cases in the United States District Court for D.C. are Cheyenne River Sioux Tribe v. Kempthorne, No. 1:06-cv-01897-JR; Confederated Tribes of the Goshute Reservation v. Kempthorne, No. 1:06-cv-01902-JR; Crow Creek Sioux Tribe v. Kempthorne, No. 1:06-cv-00900-JR; Eastern Shawnee Tribe of Oklahoma v. Kempthorne, No. 1:06-cv-02162-JR; Iowa Tribe of Kansas and Nebraska v. Kempthorne, No. 1:06-cv-01899-JR; Lower Brule Sioux Tribe v. Kempthorne, No. 1:05-cv-02495-JR; Muscogee (Creek) Nation of Oklahoma v. Kempthorne, No. 1:06-cv-02161-JR; Northwest Band of Shoshone Indians v. Kempthorne, No. 1:06-cv-02163-JR; Oglala Sioux Tribe v. Kempthorne, No. 1:04cv01126-JR; Omaha Tribe of Nebraska v. Kempthorne, No. 1:04cv00901-JR; Prairie Band of Potawatomi Indians v. Kempthorne, No. 1:05cv02496-JR; Red Cliff Band of Lake Superior Indians v. Kempthorne, No. 1:06-cv-02164-JR; Rosebud Sioux Tribe v. Kempthorne, No. 1:05-cv-02492-JR; Stillaguamish Tribe of Indians v. Kempthorne, No. 1:06-cv-01898-JR; Winnebago Tribe of Nebraska v. Kempthorne, No. 1:05cv02493-JR; and Wyandot Nation of Kansas v. Kempthorne, No. 1:05cv02491-JR.

mismanagement issues and claims. The District Court has temporarily stayed the litigation in the Leinbach cases before it and, under the Court's most recent order, the litigation of this case is temporarily stayed until July 3, 2008, and the parties are required to file a joint status report on or before that day. The Leinbach cases before the other Court of Federal Claims ("CFC") judges have also been stayed until July 3, 2008, except for Iowa Tribe of Kansas and Nebraska v. United States, No. 06cv00920-EJD (Fed. Cl.) and Eastern Shawnee Tribe of Oklahoma v. United States, No. 06cv00917-CFL (Fed. Cl.). The temporary stay of litigation in Iowa Tribe expires on September 26, 2008. The CFC has dismissed the Eastern Shawnee Tribe case, without prejudice, under 28 U.S.C. § 1500, for lack of jurisdiction.

3. Since the filing of Plaintiff's case, Plaintiff's counsel, Brian Leinbach, and Defendant's counsel have agreed that the parties (a) would explore the possibility of resolving Plaintiff's issues and claims through settlement discussions or alternative dispute resolution ("ADR") processes; (b) they would undertake such activities as informal requests and productions of relevant or potentially relevant documents and data, in furtherance of settlement discussions; and (c) they would continue to seek temporary stays of litigation, thus deferring Defendant's obligation to file its Answer or otherwise respond to the Complaint in this case, as well as the parties' obligations to comply with the requirements of RCFC Appendix A, among other things, so as to enable and facilitate the parties' informal settlement or ADR discussions. Counsel for the parties agree the parties continue to hold these positions.

4. The parties have accomplished a number of significant things in the past few months, which are detailed below.

## I. Relevant Litigation

5. On December 19, 2007, the District Court denied the motions for remand and temporary stay of litigation that Defendants had filed in the 37 Tribal trust and trust mismanagement cases that are pending before the Court (including the 16 Leinbach cases), at the direction of the Court. Further, the Court ordered Plaintiff and the Tribes in the 36 other cases to file status reports by January 18, 2008, proposing next steps or proceedings in the cases. Plaintiff and the other Leinbach Tribes proposed that the litigation of their cases be temporarily stayed until July 3, 2008, so that the parties could continue in settlement or ADR discussions and that the parties be ordered to submit a joint status report on or before July 3, 2008. By order dated April 11, 2008, the Court entered the proposal made by Plaintiff and the other Leinbach Tribes.

6. On April 29, 2008, the Salt River Pima-Maricopa Indian Community ("the Community") filed a motion for the entry of trust record preservation orders ("TRPO"). *See Salt River Pima-Maricopa Indian Community v. Kempthorne ("Salt River Pima-Maricopa")*, No. 06cv02241-JR (D.D.C.), Motion for TRPO (Dkt. No. 31). In the memorandum accompanying the TRPO Motion, counsel for the Community represented that 22 other Tribes "joined in th[e] motion." *See Salt River Pima-Maricopa,* No. 06cv02241-JR (D.D.C.), Memo in Support of Motion for TRPO (Dkt. No. 32), at 3. Plaintiff and the 15 other Leinbach Tribes are among those identified as having joined in the TRPO Motion. *Id*. On May 2, 2008, Plaintiff and the 15 other Leinbach Tribes filed formal motions for leave to join in the TRPO Motion in their respective cases. The Court granted the joinder motions on May 6, 2008. On June 20, 2008, Defendants filed their opposition to the TRPO motion in *Salt River Pima-Maricopa*, No. 06cv02241-JR. Also

on June 20, Defendants filed responses in the 16 Leinbach cases, among other cases, joining the opposition to the Community's TRPO motion in *Salt River Pima-Maricopa*.

**II. Progress of Settlement Discussions**

7. As explained previously and detailed below, the Leinbach Tribes (including Plaintiff) and Defendant have been and continue to be engaged in a process to explore and determine jointly the possibility of settling or otherwise resolving the 16 Tribes' claims and issues in the Tribal trust accounting and trust mismanagement litigation, without the need for protracted litigation. The parties have taken significant steps to achieve their goal.

8. The parties agree that this case and the other 30 Leinbach cases involve the same counsel and potentially the same consultants and experts; the cases present many similar factual and legal trust accounting and trust mismanagement issues and claims; the cases involve the same principally affected federal agencies; and the cases implicate the same types of documents and data stored at some of the same locations or generated by some of the same sources. Accordingly, the parties believe that it is sensible to negotiate and implement, if possible, a common approach for addressing Plaintiff's and the other Tribes' issues and claims. Further, the parties have agreed to select and use two of the Leinbach Tribes, the Muscogee (Creek) Nation and the Oglala Sioux Tribe, as the pilot Tribes for testing the feasibility of the common approach, after the counsel and the consultants of the parties have developed and finalized that approach. After the parties have determined the feasibility of the common approach, they would consider adjusting and implementing the approach, to the extent possible, on a rolling basis, to the 14 other Tribes.

9. The parties expect that Plaintiff and the other Leinbach Tribes would have certain document and data needs relating to their trust funds and non-monetary trust assets or resources. The parties have agreed that, in their settlement or ADR process, they would focus on addressing those document and data needs through informal requests and productions, and that they would do so, using the Muscogee (Creek) Nation and the Oglala Sioux Tribe first. Thus, to date, the parties have been and continue to be concentrating their discussions, efforts, and energies on informal document and data production for the two pilot Tribes.

10. Defendant provided its comments and initial response to Plaintiffs' proposed settlement methodology on December 20, 2007. Thereafter, counsel conferred and agreed to convene a meeting that would include the parties' consultants; enable the Interior Department to make presentations to Plaintiff's counsel and contractors about relevant information; and allow the parties to discuss various settlement-related topics. Further, they negotiated and agreed upon an agenda for the meeting.

11. On February 25-29, 2008, the parties conducted their meeting at the offices of Plaintiff's counsel in Los Angeles, California. In attendance were attorneys for Plaintiff and Defendant, their respective consultants, attorneys from the Solicitor's Office of the United States Department of the Interior, and representatives of the Office of the Special Trustee for American Indians ("OST"), and the Office of Historical Trust Accounting ("OHTA").

12. During the meeting, OHTA and its contractors conducted presentations to Plaintiff's counsel and consultants about (a) the analyses, results, and supporting documentation of the Interior Department's Tribal trust fund reconciliation project

(TRP), for the 1972-1992 period, as they related to the pilot Tribe, the Muscogee (Creek) Nation; (b) the Common Dataset, which is OHTA's compilation of transaction data for the Muscogee (Creek) Nation's trust accounts for the 1972-2006 period; (c) OHTA's data completeness validation procedures report for the 1972-1995 account transaction data; (d) the current organization, structure, and management of OST; and (e) OST's views about determining and evaluating historical Tribal trust investment performance. Defendant had provided the Common Dataset and the data completeness validation procedures report for the Muscogee (Creek) Nation to Plaintiff's counsel in December, 2007, when it submitted its comments and initial responses to Plaintiff's proposed settlement methodology.

13. Counsel for Plaintiff conducted presentations to Defendant and its representatives, describing generally the nature of the Leinbach Tribes' claims and the particular documents and/or data that, in their opinion, are needed for them to evaluate their claims and possible damages.

14. After the presentations, the parties discussed, among other things, the types of documents and data that are relevant or potentially relevant to the settlement or ADR discussions; the possible locations and availability of those documents and data for review and production; and the use of outside mediators or third-party neutral evaluators in the settlement or ADR process.

15. Based on their discussions, the parties reaffirmed their agreement as outlined above. Further, in response to the request of Plaintiff and the other Leinbach Tribes, Defendant expressed willingness and openness to using the services of a mediator or third-party neutral evaluator in the settlement or ADR process. Plaintiff proposed two

possible mediators and provided some background materials on those mediators, for Defendant's consideration. Defendant agreed to research and evaluate Plaintiff's mediator proposals and also propose other mediator candidates for Plaintiff's review.

16. Since the parties' meeting in February, 2008, Defendant has made several supplementations of its 2007 production of document images and data, in response to the requests of Plaintiff and the other Leinbach Tribes. *See* this report below. Among other things, Defendant provided to Plaintiff's counsel, in a searchable MS Access database, the results of the Interior Department's Box Index and Search System ("BISS") relating to the Muscogee (Creek) Nation, the Oglala Sioux Tribe, and the other Leinbach Tribes (including Plaintiff), for the boxes of inactive trust documents located at the American Indian Records Repository ("AIRR"). Further, Defendant's counsel conferred with Plaintiff's counsel about the possibility of conducting a meeting and document inspection at the AIRR. At Defendant's suggestion, the parties convened a telephone conference call on May 15, 2008, in which Defendant's counsel, attorneys from the Solicitor's Office of the Interior Department, and OST and OHTA representatives and consultants, conducted a tutorial for Plaintiff's counsel and his information technology staffer about the BISS search results and Access database and their uses. The tutorial covered, among other things, the fundamental features of the BISS results; the various BISS data fields; the different searching, sorting, and filtering capabilities; and several exemplary searches.

17. On June 10, 2008, Plaintiff's counsel and Defendant's counsel, attorneys from the Solicitor's Office, and OHTA representatives met at the offices of Defendant's counsel and discussed (a) the Interior Department's preparation and movement of certain inactive documents relating to the Oglala Sioux Tribe from the Pine Ridge Agency to the

AIRR; (b) the status of Plaintiff's development of its proposed methodology for the evaluation of the Tribes' trust investment claims; (c) Defendants' mediator proposals; (d) the status of Defendants' informal document and data production relating to the Tribes' trust accounting and trust fund claims; and (e) document and data searches relating to the Tribes' non-monetary trust assets and possible trips to the AIRR and agency locations to review documents. Also, representatives of the Interior Department Solicitor's Office and OHTA demonstrated for Plaintiff's counsel various BISS Search methods and ran some sample searches.

18. Defendant's counsel provided Plaintiff's counsel with a high-level inventory of the types of inactive Pine Ridge Agency documents that had been scheduled for movement to the AIRR. The parties' counsel agreed that they would continue discussing the document move and that the discussions could include certain Tribal officials.

19. Defendant's counsel provided Plaintiff's counsel with materials about the four mediator candidates that Defendant proposed for Plaintiff's and the other Leinbach Tribes' consideration. Counsel for the parties agreed that they would review the materials, narrow the list of potential candidates to those deemed suitable for joint interviewing, and discuss the scheduling of those interviews.

20. The parties' counsel generally discussed the document productions made by Defendants thus far and the possibility of a document inspection trip to the AIRR and to relevant BIA regional and agency offices to review certain documents located therein. OHTA representatives provided a status report about OHTA's preparation of Common Datasets for the remaining Leinbach Tribes (including Plaintiff) and its schedule for

producing those Datasets to the Tribes (currently, around September 30, 2008). The OHTA representatives also stated that OHTA would aim to provide copies of paper ledgers for the Tribes by September 30, 2008, as well.

## III. The Parties' Informal Document and Data Requests and Production

21. To date, as requested, Defendant has made informal document and data productions to Plaintiff's counsel that total approximately 132,353 images (12,584 documents) and that relate to Plaintiff and the 15 other Leinbach Tribes generally (*e.g.*, policy document) or to Plaintiff or the pilot Tribe, Muscogee (Creek) Nation, specifically (*e.g.*, trust fund account-related documents and data). Defendant has produced a large number of these document images and data pursuant to the parties' joint document and data confidentiality stipulations, which this Court and the district court have reviewed, approved, and entered as protective orders. In addition, Defendant has produced various aids from the National Archives and Records Administration and the Oklahoma Historical Society (for the Muscogee (Creek) Nation) that produce guidance or assistance in researching and locating materials in the publicly accessible document collections that are relevant or potentially relevant to the issues and claims of Plaintiffs and the other Leinbach Tribes. Plaintiff's counsel and consultants have been and continue to be reviewing the produced document images, data, and other materials.

22. Defendant has been and continues to be preparing informal document and data productions specifically relating to the Oglala Sioux Tribe. Defendant has not made any productions relating to this Tribe previously, because the Tribe was not identified as a pilot Tribe until March, 2008.

23. At Defendant's request, on April 3, 2008, Plaintiff revised its previous documents requests to reflect what it believed to be the core documents necessary to determine the nature, scope, and amount of its accounting-related claims. On April 7, 2008, Plaintiff's counsel levied additional informal document and data requests upon Defendant relating to its non-monetary trust-related claims, which heretofore had not been made. Defendant has been and continues to be evaluating these requests and is preparing to respond to them shortly.

24. Further, Defendant expects to make informal requests for documents and data from Plaintiff and the 15 other Tribes in the near future.

25. Simultaneous with Defendant's informal document and data research, acquisition, processing, and production efforts, the parties are continuing their discussions about various approaches for addressing the trust accounting and trust mismanagement claims of Plaintiff and the 15 other Leinbach Tribes, including the Tribes' possible methodological approaches. On June 26, 2008, the parties' counsel conducted another telephone conference call, in which they discussed steps and possible deadlines for negotiating a plan and a schedule for such activities as joint and cooperative document inspection and collection efforts at the AIRR and BIA offices; the selection of a mediator; and the Tribes' provision of, and the parties' discussion about, a proposed methodology.

## IV. <u>Next Steps or Proceedings</u>

26. As detailed above, the parties have made diligent and notable progress in their joint process to explore and determine the possibility of resolving Plaintiff's issues and claims, without the need for extended litigation. At the same time, however, the

parties require additional time to continue and complete their settlement or ADR and associated or supporting processes.

27. The parties herein believe that it would be in their best interests to work together and resolve Plaintiff's issues and claims in this case and the United States District Court, without the need for extended litigation, if possible. Accordingly, the parties agree that they should seek to continue the temporary stay of litigation of this case, while they continue to discuss the formulation and possible execution of an appropriate, mutually satisfactory alternative resolution of Plaintiff's issues and claims.

28. Based on the foregoing, the parties respectfully request that the Court grant the following relief:

a. extend the temporary stay of litigation in this case to and including January 15, 2009;

b. continue the deferral of, among other things, the obligation for Defendant to file its Answer or otherwise respond to the Complaint until after the termination of the temporary stay; and

c. order that the parties file a joint status report on or before January 15, 2009, informing the Court of the status of their efforts to resolve the issues and claims of this case, and making a proposal, by motion, if appropriate, to the Court about whether and how to proceed with this case.

29. On the one hand, the granting of this joint motion will serve the public interest by promoting judicial economy and efficiency and conserving the parties' limited resources. Further, it will not cause any undue prejudice or harm to the rights and interests of the parties herein. On the other hand, the denial of the joint motion will

unduly interfere with the parties' ability to work with each other and devise and efficient, cost-effective, and resource-conserving way for resolving the issues and claims in this case and in Plaintiff's companion case in the United States District Court, without the need for extended litigation. Additionally, it will not support or advance Defendant's ability to address and possibly resolve the other tribal trust case accounting and trust mismanagement cases that have been filed in this Court and the United States District Court by Plaintiff's counsel and co-counsel, in a similar, non-litigation-orientated manner.

WHEREFORE, the parties respectfully request that their joint motion be GRANTED.

Respectfully submitted this 3rd day of July, 2008,

*/s/ Brian J. Leinbach, by*
*/s/ Jason Bruno pursuant to*
*written authorization on July 3, 2008*
BRIAN J. LEINBACH
Engstrom, Lipscomb & Lack
10100 Santa Monica Blvd., 16th Floor
Los Angeles, CA 90067-4107
P.O. Box 663
Tel: (310) 552-3800
Fax: (310) 552-9434
Email: bleinbach@elllaw.com

Attorney of Record for Plaintiff

RONALD J. TENPAS
Assistant Attorney General

*/s/ Jason Bruno*
JASON BRUNO
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0434
Fax: (202) 353-2021
Email: Jason.Bruno@usdoj.gov

Attorney of Record for Defendant

OF COUNSEL:

PATRICIA A. MARKS
15992 A.E. Mullinix Road
Woodbine, MD 21797-8440
Tel: (410) 489-4553
Fax: (301) 854-5117

OF COUNSEL:

ANTHONY P. HOANG
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

Tel: (202) 305-0241
Fax: (202) 353-2021
Email: anthony.hoang@usdoj.gov

WALTER J. LACK
Engstrom, Lipscomb & Lack
10100 Santa Monica Blvd., 16th Floor
Los Angeles, CA 90067-4107
Tel: (310) 552-3800
Fax: (310) 552-9434

SHANI WALKER
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

GREGORY A. YATES
16830 Ventura Blvd, Suite 250
Encino, CA 91436
Tel: (310) 858-6944
Fax: (818) 905-7038

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227